MARY LEE BOTSARIS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Botsaris v. Commissioner
Docket No. 6029-87.
United States Tax Court
T.C. Memo 1988-438; 1988 Tax Ct. Memo LEXIS 465; 56 T.C.M. (CCH) 168; T.C.M. (RIA) 88438; September 14, 1988. Thomas W. Ostrander, for the petitioner. Daniel Morman, for the respondent. WILLIAMS
MEMORANDUM FINDINGS OF FACT AND OPINION WILLIAMS, Judge: The Commissioner determined a deficiency in the Federal income *466 tax of George Botsaris and Mary Lee Botsaris for the taxable year 1979 and additions to tax as follows: Deficiency
§ 6651(a)(1) [1]
§ 6653(a)(1)
$ 14,824.00
$ 6,042.00
$ 1,208.00
The case of George Botsaris has been severed and respondent concedes that petitioner is not liable for the § 6653(a)(1) addition to tax. [2] The issues for our decision are (1) whether petitioner should be relieved of joint and several liability for the deficiency pursuant to section 6013(e); and (2) whether petitioner is liable for the section 6651(a)(1) addition to tax for late filing. *467 FINDINGS OF FACT Some of the facts have been stipulated and are so found. At the time the petition was filed, petitioner resided at Philadelphia, Pennsylvania. Petitioner is a high school graduate and completed one year of junior college. She also attended art school at night for one year and is a licensed hairdresser. Petitioner's education did not include any courses in business, accounting or Federal income taxation. Petitioner met George Botsaris ("Botsaris") in 1974 and they were married in June 1977. Petitioner had two children with Botsaris, one in 1979 and a second in 1980. Petitioner and Botsaris were separated in the summer of 1985 and divorced in June 1987. Upon their separation and subsequent divorce, there was no agreement to divide property because no property had been acquired during the marriage. Specificallly, there was no real estate or bank accounts to be divided. Petitioner has custody of the children. She received $ 600 per month from Botsaris as support for herself and the children from the time of their separation until September 1987. Since their separation, petitioner has been employed as a retail sales clerk at a clothing store. In 1987, *468 she earned about $ 19,000. Nineteen Thirty-Five Spruce Street Grocery, Inc. (the "Grocery") was a corporation wholly owned by Botsaris during 1977 and at least through 1980. Petitioner began working as a cashier at the Grocery in 1977. She generally worked 4-5 nights per week, 5-6 hours per night. Petitioner stopped working at the Grocery in early 1979, when she was pregnant with her first child. From that time until she and Botsaris separated, petitioner was not employed. While she worked at the Grocery, petitioner never reviewed its financial records. She had met Botsaris' accountants but never discussed financial matters with them. She generally did not deal with delivery people and never issued checks to them. She did, however, pay the newspaper and potato chip delivery companies with cash from the register. When she did so, she recorded the payment by pressing the payment button the register and placing the invoice in the register. Petitioner also was not involved in closing the store. At closing time another employee took the money and receipts from the register and performed the required bookkeeping. Petitioner never took money from the register for personal use *469 and never saw Botsaris do so. In 1978 and 1979 Botsaris took out bank loans. Petitioner could not remember the amount of money he borrowed or whether the loans were for business or personal use. In 1977, petitioner and Botsaris lived in a three bedroom apartment in Philadelphia. In 1978, they moved to a two bedroom apartment, also in Philadelphia. The rent on the apartment in 1979 was approximately $ 500-$ 700 per month. When petitioner met Botsaris, he drove a Lincoln automobile. Botsaris continued to drive one car, another Lincoln, throughout their marriage. Before their marriage, petitioner and Botsaris traveled to Greece, where Botsaris' family lived. After their marriage in 1977, they again traveled to Greece. Petitioner could not remember whether they went to Greece in 1978 but knows they went there in late 1979 for the son's christening. On their trips to Greece, petitioner and Botsaris stayed with relatives. Botsaris made other trips to Greece on his own. Petitioner paid all of the family's bills with cash provided by Botsaris, including rent, utilities and doctor bills. Petitioner purchased groceries at the Grocery. She did not pay for the groceries when *470 she took them but approximately every two weeks Botsaris would put money in the cash register for her purchases. Botsaris imposed a limit on petitioner's purchases at the Grocery. Petitioner and Botsaris had no credit cards. Petitioner's full-time responsibility from May 1979 when her first child was born was taking care of the house and raising the children. A woman was hired to help occasionally with the housework, but petitioner testified that she usually did not show up. Botsaris was responsible for the care and protection of the family and all financial concerns. Financial matters, including the preparation of tax returns, were not her concern. Petitioner and Botsaris did not have an extravagant or lavish life-style in 1979. Their standard of living did not change significantly from 1976 through 1979. On their 1979 Federal income tax return, petitioner and Botsaris reported income of $ 36,400. Petitioner believed that that amount was sufficient to cover their expenses for the year. Steve Booras was employed at the Grocery at the time petitioner worked there. Botsaris told petitioner that Booras worked at the Grocery. Petitioner did not know what work Booras performed *471 and never paid much attention to him. Aside from preparation for trial, petitioner has never seen the 1979 joint Federal income tax return prepared by an acountant and filed by Botsaris. She did not sign the return but signed a declaration sent by respondent dated October 16, 1980, requesting her signature. At the time she signed the declaration, petitioner did not review the 1979 return. She signed out of faith in her husband. In his notice of deficiency, respondent determined that petitioner and Botsaris understated their income for 1979, in part as a result of the omission of $ 15,550 in Botsaris' wages, and, in part as a $ 11,500 constructive dividend to Botsaris for wages paid by the Grocery to Booras. The remainder of the understatement of income on the 1979 return consists of $ 4,525 in net short-term capital gain arising from the sale of stock. The $ 15,550 of "wages" consists of $15,050 in accrued bonuses and commissions for 1978 that were paid in 1979 and $ 500 in wages paid to Botsaris in 1979. The $ 11,500 of dividend income for wages paid to Booras is the result of respondent's view that Booras was placed on the payroll for personal reasons by Botsaris and *472 performed few, if any, services for the Grocery. Respondent treated Booras' wages as a constructive dividend to Botsaris. Petitioner recalled opening an account at a stock brokerage firm with Botsaris but could not remember any details. Botsaris never discussed any stock transactions with her. Petitioner's signature, however, appears as an endorsement on a check from the stock brokerage firm in the amount of $ 1,477.33 and dated November 8, 1979. The check was payable to George and Mary Le Botsaris but was endorsed to "San Angeles [sic] Brothers & Co., Inc." Sosangles Brothers & Co., Inc. was a food supplier for the Grocery. OPINION At the trial, petitioner did not dispute respondent's deficiency determination. She argues that she is an innocent spouse within the meaning of section 6013(e) and thus should not be held liable for the deficiency or addition to tax. Respondent concedes that petitioner is an innocent spouse as to the $ 11,500 paid to Booras which respondent determined to be a constructive dividend to Botsaris. The remaining issued for our decision are whether petitioner qualifies as a innocent spouse as to the $ 15,550 of unreported wages and the $ 4,525 of *473 unreported short-term capital gain and whether she is liable for the section 6651(a)(1) addition to tax for late filing. To obtain innocent spouse relief pursuant to section 6013(e), as amended by the Tax Reform Act of 1984, [3] petitioner must establish that (1) on the joint return made for the year in issue, there is a substantial understatement of tax attributable to grossly erroneous items of Botsaris; (2) she did not know and had no reason to know of such substantial understatement when she signed the return; and (3) considering all of the facts and circumstances, it would be inequitable to hold her liable for the deficiency attributable to the substantial understatement. See section 6013(e)(1); , affd. . Each of these requirements must be satisfied to obtain innocent spouse relief. A substantial understatement means any understatement that exceeds $ 500. Section 6013(e)(3). A grossly erroneous item is defined, in pertinent part, as "any item of gross income attributable to [the spouse not claiming innocent spouse relief] which is omitted from gross income." Section *474 6013(e)(2)(A). The parties agree that the $ 15,550 of unreported wages constitutes a substantial understatement attributable to a grossly erroneous item of Botsaris. The $ 4,525 of unreported short-term capital gain from the sale of stock held jointly by petitioner and Botsaris, however, is not a grossly erroneous item attributable solely to Botsaris. The stock brokerage account was a joint account. Because she is a joint owner, the failure to report the gain on the sale of stock is an item attributable to petitioner. Petitioner, therefore, cannot be relieved of liability for the deficiency as to that amount and is jointly liable with Botsaris for the understatement of tax attributable to the $ 4,525 of unreported short-term capital gain. We must next decide whether petitioner knew or had reason to know of the understatement of tax attributable to the $ 15,550 of unreported wages and, if not, whether it would be inequitable to hold her liable for the deficiency on that amount. During *475 1979, petitioner worked at the Grocery for only a few days. After her first child was born in May 1979, she devoted herself full-time to taking care of the house and children. She considered financial matters, including tax return preparation, to be Botsaris' job. Such matters simply "weren't an issue in [her] life." Botsaris' accountant prepared a joint Federal income tax return for petitioner and Botsaris. Botsaris signed the return and mailed it without giving petitioner the opportunity to review or sign it. Respondent subsequently sent petitioner and Botsaris a letter with an attached declaration for her signature. By signing the declaration, petitioner stated, under penalty of perjury, that she had examined the return ant that it was correct to the best of her knowledge. In fact, prior to trial preparation, petitioner had never seen the 1979 return filed on her behalf. She stated that she signed the declaration out of faith in her husband and that she had no reason to question him. Because petitioner never saw the 1979 return, she could not have known of the understatement of tax. She should have examined the return, but even had she done so, we believe that petitioner *476 would have had no reason to know of the understatement. She was not working at the Grocery for most of 1979 and took no part in managing the Grocery's or her family's finances. She left all financial matters to Botsaris and was completely dependent on him for her support. "A reasonably prudent taxpayer, with her knowledge of the family finances, would have no reason to know of the omission." . Respondent nonetheless argues that petitioner's and Botsaris' life-style gave her reason to suspect that there was an understatement of tax. Unusual or lavish expenditures constituting a significant improvement in the taxpayer' life-style may indicate that the purported innocent spouse had reason to know of unreported income. ; . The standard to be applied in determining whether petitioner had reason to know of the substantial understatement is whether a reasonable person in her circumstances could have been expected to know at the time the return was executed. ; *477 . Respondent cites Botsaris' Lincoln automobile, the trips to Greece, the "luxury" apartment in which the Botsaris' lived, the fact that bills were paid in cash and that petitioner supposedly had a maid in 1979 as evidence of an unusual or extravagant life-style. Petitioner, however, did not experience a change in the family's life-style in the year of the understatement. Botsaris drove a Lincoln from the time petitioner met him in 1974. The family travelled to Greece to visit relatives prior to 1979, and Botsaris also made trips himself prior to 1979. There is no evidence that the Botsaris' apartment, for which they paid rent of approximately $ 500-700 per month in 1979, was a "luxury" apartment and beyond their means given their reported income of $ 36,400. Respondent asserts that petitioner had a housekeeper. Petitioner testified, however, that a woman came to help with the housework occasionally but usually did not show up. We do not consider occasional assistance with housework extravagant. The fact that bills were paid exclusively in cash is unusual. Standing alone, however, it does not establish that petitioner *478 had reason to know that there was unreported income. Petitioner cared for her children and had no reason to believe that Botsaris was failing in his responsibility. Finally, petitioner believed the amount of income reported on the 1979 return, $ 36,400, was sufficient to cover their expenses for the year. She now supports herself and her children on her $ 19,000 annual salary and her family's help. The $ 600 monthly support payments from Botsaris ceased in September 1987. For all of the foregoing reasons, we conclude that petitioner did not know or have reason to know of the $ 15,550 of unreported income and that it would be inequitable to hold her liable for the deficiency attributable to that amount. Respondent also asserts that petitioner is jointly liable with Botsaris for the addition to tax for late filing pursuant to section 6651(a)(1). Section 6651(a)(1) provides for a five-percent addition to tax for each month that a return is late calculated based on the amount required to be shown on the return. The maximum addition to tax under this subsection cannot exceed 25 percent. The taxpayer is relieved of liability for the addition to tax if he establishes that the *479 failure to file a timely return was "due to reasonable cause and not due to willful neglect." Section 6651(a)(1). The Botsaris' joint Federal income tax return for 1979 was due April 15, 1980, but was not filed until September 26, 1980. No request for an extension of time to file was made. We do not believe that petitioner should be held liable for the addition to tax for late filing. Petitioner took no part in the preparation and filing of Federal income tax returns because her husband was responsible for all of the family's financial concerns. Under the circumstances, we cannot hold petitioner responsible for Botsaris' late filing. As to her, the failure to timely file was due to reasonable cause and not due to willful neglect. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 as in effect for 1979. ↩
2. Respondent issued three notices of deficiencies on December 11, 1986, determining deficiencies and additions to tax against George and Mary Lee Botsaris for the taxable year 1979 (docket No. 6029-87), George Botsaris individually for the taxable years 1978 and 1980 (docket No. 6027-87) and 1935 Spruce Street Groceries, Inc. for the taxable years 1978 and 1980 (docket No. 6030-87). Petitions in each case were timely filed on March 10, 1987. On December 8, 1987, we granted respondent's unopposed motion to consolidate the above cases. Following a hearing and trial of petitioner's case held at Philadelphia, Pennsylvania on March 29, 1988, we issued an order severing the cases relating to George Botsaris. The case of George Botsaris for the taxable year 1979 has been assigned docket No. 9077-88 and consolidated with the case at docket No. 6027-87. We also severed the case of 1935 Spruce Street Groceries, Inc. at docket No. 6030-87. ↩
3. The Tax Reform Act of 1984, Pub. L. 98-369, sec. 424(a), 98 Stat. 801-802, amended section 6013(e) retroactively to all years to which the Internal Revenue Code of 1954 applies. ↩